UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-cv-80697-SINGHAL/Matthewman

LYNDA SCARBERRY DILLON, individually
and as personal representative of the Estate of
John Thomas Dillon, IV, deceased,

    Plaintiff,

v.

SUNBELT RENTALS, INC., a foreign
corporation, JOHN DOE, and VANDERLANS &
SONS, INC., a foreign corporation,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF PLAINTIFF'S EXPERT HELMUT BROSZ**

**THIS CAUSE** is before the Court on Defendants' *Daubert*[1] Motion to Exclude/Limit Testimony of Helmut Brosz (DE [70]). The Court has carefully considered the motion, Plaintiff's response in opposition (DE [81]), Defendants' reply in support (DE [99]), the Expert Report of Helmut Brosz (DE [70-1]), the Supplemental Expert Report of Helmut Brosz (DE [70-2]), and the Deposition Transcript of Helmut Brosz (DE [70-3]), among other filings by the parties. Taking all of the foregoing into consideration and being fully advised in the premises, the motion is **GRANTED**.

**I.**  **BRIEF BACKGROUND**

This case arises from an incident in Boynton Beach, Florida on November 10, 2017 while John Thomas Dillon, IV ("Decedent") was repairing an underground sewer pipe.

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

The pipe—installed to block the flow of water—exploded, striking and killing Decedent. Defendant Vanderlans & Sons, Inc. ("Vanderlans") designed, manufactured, and distributed the pipe; Defendant Sunbelt Rentals, Inc. ("Sunbelt") rented it to Dillon's employer (a nonparty). Plaintiff Lynda Scarberry Dillon, Decedent's mother, brings this action against both Vanderlans and Sunbelt for wrongful death and products liability.

## II.     PLAINTIFF'S PROFFERED EXPERT: HELMUT BROSZ

Plaintiff has retained Helmut Brosz, a forensic engineer, as an expert on the cause of the pipe plug's failure. He is of the opinion that the pipe plug failed due to inner and outer layers delaminating during the manufacturing process. He also intends to testify that Sunbelt failed to inspect the plug properly before it was rented to the Decedent's employer in the defective condition.

Specially, he offers the following five opinions: (1) The subject pipe plug was defectively manufactured in a defective condition when it left Vanderlans' factory which was a cause of Mr. Dillon's death; (2) The pipe plug had inadequate warnings; (3) The pipe plug was defective due to Vanderlans' failure to follow good engineering and manufacturing practices and implement quality control systems; (4) Sunbelt failed to maintain the pipe plug properly and distributed the pipe plug in a defective condition; and (5) The pipe plug is defective in its design for failure to incorporate a pressure relief valve.

Defendants move to exclude Brosz at trial because they argue he is not qualified to offer expert opinion on forensic analysis of sewer pipe plugs and because the methodology he used in arriving at his opinions is unreliable. They also move to exclude Brosz's testimony on two specific topics: Internal tube barbed threading and Decedent's blocking/bracing the pipe plug.

2

### III.   LEGAL STANDARD ON *DAUBERT* MOTIONS

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  This gatekeeping function directs the court "admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  The Court must "determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," which includes, "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

The Court must evaluate a three-prong test to qualify an expert witness: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1291–92.  "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Id.*

But Rule 702 is not the end of the story.  "Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *United States v.*

3

*Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). Under Federal Rule of Evidence 403, relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." A court enjoys broad discretion in applying the Rule 403 balancing test. *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1274 (S.D. Fla. 2011).

## IV. ANALYSIS

### A. Qualifications

Under *Daubert*, a witness is qualified as an expert if he or she possesses specialized knowledge, skill, experience, training, or education. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *see also* Fed. R. Evid. 702. Brosz is sufficiently qualified. To list each of his qualifications and accomplishments would not be sensible. Suffice it to say, he is board certified in forensic engineering and is a diplomat of the International Board of Forensic Engineering Sciences and has over forty years' experience in forensic engineering sciences.

However, in moving to exclude him, Defendants argue that Brosz's expertise is in *electrical* engineering, not mechanical engineering—that he is not an expert specifically in the fields of material sciences or failure analysis. In essence, their argument is that, while Brosz may be minimally qualified in engineering, he is not specifically qualified in *mechanical* engineering. They focus on his never having performed a forensic analysis on sewer pipe plugs or on delamination of rubber. They also argue that he has never observed, or been involved in, the inflation of the sewer pipe plug where there has been

delamination that has caused a bulge.  For all of this, he is not qualified to testify in *this* case, Defendants insist.[2]

While there is case law to discern a second layer of qualification requirements, the Court concludes, on this point, Defendants are holding Brosz to too exacting a standard. True, the proffered expert must meet not only the basic qualification requirements, but also be qualified specifically in the area on which he or she proposes to testify—on topics that are "sufficiently within his expertise."  *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001).  However, he or she need not be a *perfect* expert.  *See Fitzgibbon v. Winnebago Indus., Inc.*, 2020 WL 1172495, at *2 (S.D. Fla. Jan. 29, 2020).  The general case law holds that, "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility."  *Id.*  To apply the standard put forth by Defendants would create an onerous and unrealistic test.  While their arguments may be well taken, they speak more to the credibility and weight of his testimony, not admissibility.

Initially, Brosz is qualified to competently testify under *Daubert*.  The next step, then, is to determine whether his proposed opinions and testimony are admissible under *Daubert*.  The Court determines they are not.

---

[2] Interestingly, in the federal court case found on a Westlaw search in which Brosz's testimony was admitted, he testified within his electrical engineering expertise. *Cole's Tool Works v. Am. Power Conversion Corp.*, 2009 WL 1298236, at *3 (N.D. Miss. May 7, 2009) ('Defendant also seeks to exclude the testimony of Helmut Brosz, a forensic electrical engineer with decades of experience in investigating electrical aspects/causes of fire and other events. In addition to his retention by many companies and individuals, he has also served as an expert for the Department of Labor, Bureau of Tobacco and Firearms and the Department of Justice. Brosz is expected to provide expert testimony regarding whether a backup uninterruptible power supply device designed and manufactured by defendant was defective and suffered a catastrophic failure which caused the fire.").

### B. Reliability

For the reliability prong, a court is to consider several factors: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Rink*, 400 F.3d at 1292. Of course, this does "*not* constitute a definitive checklist or test." *Kumho Tire*, 526 U.S. at 150 (emphasis in original). These factors are "a mere starting point," *Allison*, 184 F.3d at 1312, and the focus should be on "principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595.

"The Eleventh Circuit has occasionally hinted that this methodology inquiry may be the most critical of the *Daubert* analysis." *Nunez v. Coloplast Corp.*, 2020 WL 2315077, at *3 (S.D. Fla. May 11, 2020). "Rulings on admissibly under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). The court's gatekeeping role requires more than simply "taking the expert's word for it." *Frazier*, 387 F.3d at 1261. The "basic foundation for admissibility" is the expert's opinions be firmly supported "by appropriate validation." *Id.*

As to the reliability prong—specifically, the methodology Brosz employed—Defendants argue his opinions do not pass *Daubert* muster and are unreliable primarily because he inspected the pipe plug only through a visual examination. From this visual inspection alone, he determined: the pipe plug was defective due to delamination; the delamination occurred during the manufacturing process; and it was defective at the time it left Vanderlans.

Plaintiff responds that this argument is "untrue" and does "not hold water." This response is curious. From a simple review of the record, it is clear that Brosz inspected the sewer pipe plug only by visual inspection in arriving at his opinion that there was delamination. From this alone, he determined that the delamination occurred during the manufacturing process, weakening the plug and causing the plug to rupture. He did not perform any tactile inspection.

Defendants contend Brosz's methodology is similar to the expert's methodology in the Supreme Court's landmark case *Kumho Tire*. The incident there involved a tire blow out. *See Kumho Tire*, 526 U.S. at 142. The plaintiff's proffered expert was a mechanical engineer who had worked in the industry for ten years. *Id.* at 143. Based on both a visual and tactile inspection of the damaged tire, he concluded a manufacturing defect (as opposed to user misuse) caused the blowout. *Id.* at 144. He opined that, if user misuse caused the tire blow out, he would have noticed at least two of the following four "symptoms": "(a) tread wear on the tire's shoulder that is greater than the tread wear along the tire's center; (b) signs of a 'bead groove,' where the beads have been pushed too hard against the bead seat on the inside of the tire's rim; (c) sidewalls of the tire with physical signs of deterioration, such as discoloration; and/or (d) marks on the tire's rim flange." *Id.* And he claimed he would have been able to see these with the naked eye. *Id.*

The Supreme Court noted his "two-factor test" was not used by other experts in the industry, nor validated by any published or peer-reviewed research. *Id.* at 158. Thus, the expert failed the basic foundation for admissibility that his opinions be firmly supported by appropriate validation. *See also McCorvey*, 298 F.3d at 1257.

7

The Court sees parallels to *Kumho Tire*, though limited. There is no indication from the opinion that the Supreme Court determined the expert was not qualified based on the sufficiency of his testing alone—that is, whether the district court properly excluded him based on the quality of his visual and tactile inspection of the tire. The Court only reached the conclusion that the expert was unqualified because of the standard against which he assessed his findings: his seemingly created two-factor test. Therefore, to the extent Defendants argue that *Kumho Tire* instructs Brosz should be excluded because he "only employed a visual examination of the sewer pipe plug" the Court disagrees. Again, the Supreme Court did not find the expert unqualified because his visual and tactile inspection was inadequate.

However, the Court finds a persuasive comparison between the *Kumho Tire* expert's so-called two-factor test and the standard against which Brosz assessed his findings here. While not neatly tidied into four factors and titled as a "two-factor test," Brosz, nevertheless, employs the same type of *ipse dixit* testing as the expert in *Kumho Tire*. The Court finds each of his opinions or conclusions are couched by unresolved questions that he cannot answer. While he concludes that the pipe plug was manufactured defectively because the delamination occurred during the manufacturing process, he cannot state with a reasonable degree of engineering certainty at which point in the manufacturing process the alleged delamination occurred. While he believes it was during processing temperature, he does not know precisely how much time and temperature is required for a Vanderlans plug. In fact, he does not really answer the seminal question as to how the temperature process relates to the delamination, at all.

Finally, the Court takes note of Brosz's solicitation initially to Defendants' counsel, then to Plaintiff's counsel for his expert-witness services. Both sides agree that he first contacted Defendants' counsel, soliciting work as an expert witness *in this case*. He then wrote to Plaintiff's counsel and represented that he has "forensic engineering and application experience involving pipe plugs."

Defendants cite to *Lord v. Fairway Electric Corp.*, 223 F. Supp. 2d 1270 (M.D. Fla. 2002), where Brosz likewise solicited expert work in a case nearly eighteen years ago. The court excluded Brosz not because it found his testimony to be "litigation-driven to the point that it should be excluded solely on that ground." *Lord*, 223 F. Supp. 2d at 1282. However, his "conduct" in the case gave the court "pause." *Id.* ("From the manner in which he recruited Plaintiff's counsel to hire him, to his private tests of the equipment outside the presence of Siemens's representatives, to his last-minute conception of a theory of causation, his approach to this case has been unconventional to say the least.").

Plaintiff correctly identifies the reason the court excluded Brosz was *not* because his testimony was "litigation-driven." If allowed to testify, that part of Brosz's conduct would be admissible for the jury to weigh and pass on credibility. Plaintiff responds that Defendants' argument is nothing more than "a desperate attempt . . . to win at all costs and disparage a highly qualified expert." The Court disagrees with this portrayal of Defendants' position.

Like in *Lord*, the Court finds Brosz's approach to this case unconventional to say the least, as well. Despite his representation to Plaintiff's counsel, there is no indication that he has any experience in performing an analysis on a sewer pipe plug. Nor is there any indication that he has performed an analysis on rubber delamination. Moreover, the

analysis as presented through Brosz here, seems completely separate from those analyses that are reproducible with low to no error rates. Although a plaintiff should ordinarily have the witnesses of her choice, Brosz fails to overcome the legal requirements established in *Daubert*.

## V. CONCLUSION

Ultimately, in fulfilling its gatekeeping role, the Court must exclude Brosz under *Daubert*. Thus, based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' *Daubert* Motion to Exclude/Limit Testimony of Helmut Brosz (DE [70]) is **GRANTED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 29th day of May 2020.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF